[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13295
_____

D.C. Docket No. 1:14-cv-03283-RWS


GRANGE MUTUAL CASUALTY COMPANY,

Plaintiff-Appellant,

versus

BORIS WOODARD,
SUSAN WOODARD,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 30, 2017)

Before HULL and BLACK, Circuit Judges, and MORENO,[*] District Judge

HULL, Circuit Judge:

_____

[*]Honorable Federico A. Moreno, United States District Judge for the Southern District of
Florida, sitting by designation.

This case returns to us from the Supreme Court of Georgia, to whom we certified certain questions concerning O.C.G.A. § 9-11-67.1.  Before turning to those questions, we offer a brief review of the facts, which are not in dispute and are set out more fully in our previous opinion.  See Grange Mut. Cas. Co. v. Woodard, 826 F.3d 1289 (11th Cir. 2016).

## I.  FACTUAL BACKGROUND

In March 2014, the Dempseys and the Woodards were involved in a car accident in which Boris Woodard was injured and his adult daughter, Anna Woodard, was killed.  Grange Mut., 826 F.3d at 1291.  The Dempseys carried car insurance through Grange Mutual Casualty Company (the "Insurer Grange").  Id. The Dempseys' liability limits for bodily injury claims were $50,000 per person and $100,000 per accident.  Id.

On June 19, 2014, the Woodards' attorney mailed the Insurer Grange a settlement offer, offering a limited release of their claims against the Dempseys and the Insurer Grange in exchange for the $100,000 policy limit.  Id.  The June 19 letter was titled "Offer to Settle Tort Claims Made Pursuant to O.C.G.A. § 9-11-67.1 and O.C.G.A. § 51-12-14."  Id.

As this Court previously explained:

The Woodards' June 19 letter contained an 11-item list of requirements for the Insurer Grange to comply with to accept the settlement offer.  A statement, typed in bold, preceded the list and said: "The following items must be noted and fully and strictly

2

complied with in order to accept this offer."  The items most relevant to this appeal (numbers 1-5) are summarized below.

(1)    "Pursuant to O.C.G.A. § 9–11–67.1, you have 30 days from your receipt of this offer to accept it."

(2)    "Your acceptance of this offer must be made in writing to me at the above address shown in my letterhead. If we do not actually receive a timely acceptance, this offer will be deemed rejected . . . ."

(3)    Acceptance requires affidavits from Thomas Dempsey, Delann Dempsey, and a Grange officer, swearing to the policy limits. "All three affidavits must be received in my office within ten (10) days after your written acceptance of this offer to settle. Timely compliance with this paragraph is an essential element of acceptance."

(4)    "If payment is not tendered in cash pursuant to O.C.G.A. 9–11–67.1(f)(1), payment in the amount of $50,000 must be made payable to 'Boris and Susan Woodard and Michael L. Neff, their attorney for the wrongful death of their daughter, Anna Woodard' within ten (10) days after your written acceptance of this offer to settle. Timely payment is an essential element of acceptance."

(5)    "If payment is not tendered in cash pursuant to O.C.G.A. 9–11–67.1(f)(1), payment in the amount of $50,000 must be made payable to 'Boris Woodard and Michael L. Neff, his attorney' within ten (10) days after your written acceptance of this offer to settle. Timely payment is an essential element of acceptance."

Id. at 1291-92 (emphases added).

It is undisputed that the Insurer Grange timely sent the Woodards' attorney a written acceptance of the offer on July 22, 2014.  Id. at 1292.  Ten days from the July 22 acceptance letter was August 1.  Id.  On July 29, the Insurer Grange emailed the Woodards' attorney the required affidavits and stated that the checks were being issued that day.  Id.

3

Heather Conn, the claims adjuster that the Insurer Grange had assigned to the case (the "Adjuster Conn"), ordered the two settlement checks through the Insurer Grange's automated claims payment system, which was the company's routine practice for issuing such checks.  Id. at 1291, 1292.  As this Court previously explained:

> Adjusters pull the mailing address for the checks from contact information previously uploaded into the Insurer Grange's system. The adjusters order the checks to go to the address on file, and then the checks are printed and mailed from a central location.  The adjusters never see the checks.

Id. at 1292.  Adjuster Conn followed this process when ordering the checks on July 29, using the contact information that was in the system for the Woodards' attorney.[1]  Id.

On August 12, attorney Michael Neff ("Attorney Neff") told Adjuster Conn that the settlement checks had not arrived and that the parties, therefore, had never reached a binding settlement agreement.  Id.  Despite Attorney Neff's statement that he would not accept reissued checks, Adjuster Conn ordered new checks and mailed them to Attorney Neff on August 12, along with screenshots showing the July 29 issuance of the original checks.  Id.  According to Conn's accompanying letter to Neff, the screenshots showed that the law office's address was complete in

---

[1]The Woodards were represented by T. Shane Peagler of the Law Offices of Michael Lawson Neff, P.C.  826 F.3d at 1291.  Adjuster Conn used the contact information that was in the system for "Michael L Neff PC" when issuing the checks on July 29.  Id. at 1292.

4

the "address tab," but "somehow drop[ped] off in the mail/billing address tab." Id. The Woodards rejected this as an untimely settlement offer and returned the new checks. Id. at 1292-93.

An information technology employee at the Insurer Grange later executed an affidavit stating that, when he created "test checks" using the information in the Insurer Grange's system, the street was missing from the mailing address printed on the checks. Id. at 1293. The employee concluded that "the street address was likely missing from the July 2014 checks." Id.

## II.  PROCEDURAL BACKGROUND

### A.    Proceedings before the district court

In October 2014, the Insurer Grange filed a one-count complaint against the Woodards. Id. The parties filed cross motions for summary judgment in the district court. Id. at 1293-94. The district court granted the Woodards' motion for summary judgment and denied the Insurer Grange's cross-motion, concluding that the parties never formed a settlement contract. Id. at 1294.

The district court first concluded that O.C.G.A. § 9-11-67.1 does not prohibit a party from requiring payment as a condition of acceptance of a settlement offer. Id. at 1294-95. The district court also concluded that the Woodards had made timely payment a condition of acceptance of their settlement offer. Id. at 1295. Finally, the district court held that the Insurer Grange did not

5

comply with the timely payment requirement, that it consequently failed to accept the Woodards' settlement offer, and that the parties thus had not formed a binding settlement agreement.  Id.

## B.    Proceedings before this Court

On appeal, this Court concluded that O.C.G.A. § 9-11-67.1 was "arguably ambiguous with respect to its requirements."[2]  Id. at 1300.  If O.C.G.A. § 9-11-

---

[2] The relevant parts of the statute read as follows:

(a)     Prior to the filing of a civil action, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and contain the following material terms:

    (1)     The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer;

    (2)     Amount of monetary payment;

    (3)     The party or parties the claimant or claimants will release if such offer is accepted;

    (4)     The type of release, if any, the claimant or claimants will provide to each releasee; and

    (5)     The claims to be released.

(b)     The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety.

(c)     Nothing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to the parties.

(d)     Upon receipt of an offer to settle set forth in subsection (a) of this Code section, the recipients shall have the right to seek clarification regarding terms, liens, subrogation claims, standing to release claims, medical bills, medical records, and other relevant facts.  An attempt to seek reasonable clarification shall not be deemed a counteroffer.

(e)     An offer to settle made pursuant to this Code section shall be sent by certified mail or statutory overnight delivery, return receipt requested, and shall specifically reference this Code section. . . .

(g)     Nothing in this Code section shall prohibit a party making an offer to settle from requiring payment within a specified period; provided, however, that such period shall be not less than ten days after the written acceptance of the offer to settle.

O.C.G.A. § 9-11-67.1.

67.1 were interpreted to mean that an offeree could accept an offer in writing, thereby forming a binding contract with payment being a term of contract performance rather than contract formation, then the Insurer Grange would have fulfilled the requirements of the offer letter and a binding settlement agreement would have been formed.  Id.  If, on the other hand, timely payment was a precondition to acceptance under the statute, then the Insurer Grange's failure to make that timely payment meant that no contract was ever formed between the parties.  Id.  Because there was "substantial doubt about the correct answer to a dispositive question of state law," we certified the following four questions to the Supreme Court of Georgia:

(1)    UNDER GEORGIA LAW AND THE FACTS OF THIS CASE, DID THE PARTIES ENTER A BINDING SETTLEMENT AGREEMENT WHEN THE INSURER GRANGE ACCEPTED THE WOODARDS' OFFER IN WRITING?

(2)    UNDER GEORGIA LAW, DOES O.C.G.A. § 9-11-67.1 PERMIT UNILATERAL CONTRACTS WHEREBY OFFERORS MAY DEMAND ACCEPTANCE IN THE FORM OF PERFORMANCE BEFORE THERE IS A BINDING, ENFORCEABLE SETTLEMENT CONTRACT?

7

(3)    UNDER GEORGIA LAW AND THE FACTS OF THIS CASE, DID O.C.G.A. § 9-11-67.1 PERMIT THE WOODARDS TO DEMAND TIMELY PAYMENT AS A CONDITION OF ACCEPTING THEIR OFFER?

(4)    UNDER GEORGIA LAW AND THE FACTS OF THIS CASE, IF THERE WAS A BINDING SETTLEMENT AGREEMENT, DID THE INSURER GRANGE BREACH THAT AGREEMENT AS TO PAYMENT, AND WHAT IS THE REMEDY UNDER GEORGIA LAW?

Id. at 1300-01.

## C.    Proceedings before the Supreme Court of Georgia

On March 6, 2017, the Supreme Court of Georgia issued its decision in response to our certified questions, answering Question 2 in the affirmative and also answering Question 3 in the affirmative as a "general issue of law," although it declined to consider Question 3 in the context of the facts of this case. Grange Mut. Cas. Co. v. Woodard, 797 S.E.2d 814, 823 (Ga. 2017).

The Georgia Supreme Court first noted that statutes are to be given their "plain and ordinary meaning," and that O.C.G.A. § 9-11-67.1 should be interpreted in view of the "large body of law on contract formation generally and settlement formation specifically." Id. at 818-19.

8

Parsing the language of the statute, the Supreme Court of Georgia concluded that, while O.C.G.A. § 9-11-67.1 sets forth certain terms and conditions that must be included in every written offer of settlement, nothing in Georgia law or the statute precludes parties from requiring "some additional act to effectuate acceptance":

> We agree [with the Insurer Grange] . . . that a Pre-Suit Offer must be accepted in writing, at least as to the five terms listed in subsection (a). We do not agree that this language means that a Pre-Suit Offer cannot also require some additional act to effectuate acceptance, however. . . . [T]he common law is well established that (1) the offeror is the master of his or her offer, and (2) agreement requires a meeting of the minds on all material terms. Reading the statute consistent with those principles, we do not equate the phrase "written acceptance" with necessarily effectuating a binding settlement . . . . Rather, written acceptance of Pre-Suit Offers is necessary to effectuate a binding settlement, but whether it is sufficient depends on the offer; if the recipient of a Pre-Suit Offer is asked to do something more to accept, the parties do not have a meeting of the minds if the recipient does not also perform that action.

Id. at 821.

Thus, as to Question 2, the Supreme Court of Georgia concluded that "O.C.G.A. § 9-11-67.1 permits 'unilateral' contracts whereby Pre-Suit Offers may demand acceptance in the form of performance . . . before there is a binding enforceable settlement contract." Id. at 823. Further, as to Question 3, the court concluded that "O.C.G.A. § 9-11-67.1 does not preclude a Pre-Suit Offer from demanding timely payment as a condition of acceptance." Id.

9

The Supreme Court of Georgia expressly "decline[d] to answer the Eleventh Circuit's questions to the extent that they call us to decide the ultimate issues in the case, i.e., Question (1) . . . and Question (4)," leaving our Court to apply the above Georgia law and statute to the facts of this case. Id.

Following the Supreme Court of Georgia's decision, we granted the parties leave to file supplemental letter briefs. The parties filed their supplemental briefs in May 2017.

### III.  ISSUES NOW BEFORE THIS COURT

The Supreme Court of Georgia's partial answers to our certified questions resolved the questions of statutory interpretation involved in this appeal. However, the Supreme Court of Georgia's opinion left two issues unresolved. First, while the Georgia Supreme Court concluded that, as a "general issue of law," O.C.G.A. § 9-11-67.1 allows offerors to demand timely payment as a precondition to acceptance of their offer, the court specifically "decline[d] to consider it in the context of the facts of this case." Id. at 823. In other words, we must still resolve whether the terms of the Woodards' June 19 offer letter made timely payment a precondition of acceptance. Second, if the offer letter did make timely payment a precondition, we must address whether the Insurer Grange complied with this requirement by issuing the checks on July 29.

10

Because the Supreme Court of Georgia's answers to our certified questions did not resolve these outstanding issues (and we did not address them in our first opinion in this case), we will turn to them now.

## IV.  STANDARD OF REVIEW

We review the district court's interpretation of a contract <u>de novo</u>.  <u>Rose v. M/V "Gulf Stream Falcon"</u>, 186 F.3d 1345, 1350 (11th Cir. 1999).  Under Georgia law, there are three steps in the process of contract construction.  <u>Ga.-Pac. Corp. v. Lieberam</u>, 959 F.2d 901, 904 (11th Cir. 1992) (quoting <u>Copy Sys. of Savannah, Inc. v. Page</u>, 398 S.E.2d 784, 785 (Ga. Ct. App. 1990)).  The court must first decide whether the contract language in the Woodards' June 19 offer letter is ambiguous; if it is ambiguous, the court must then utilize the applicable rules of construction; if an ambiguity still remains, a jury must then resolve the ambiguity. <u>Id.</u>  "Whether a contract is ambiguous is a question of law for the courts to decide." <u>Id.</u>

When interpreting a contract, the language must be afforded "its literal meaning and plain ordinary words given their usual significance."  <u>Unified Gov't of Athens-Clarke Cty. v. McCrary</u>, 635 S.E.2d 150, 152 (Ga. 2006). "[D]ictionaries may supply the plain and ordinary meaning of a word."  <u>Capital Color Printing, Inc. v. Ahern</u>, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008) (alteration and quotation marks omitted).  When the language in a contract is ambiguous,

11

however, courts must resort to rules of contract construction. Atlanta Emergency

Servs., LLC v. Clark, 761 S.E.2d 437, 441 (Ga. Ct. App. 2014). Georgia courts

explain that:

> Ambiguity exists where the words used in the contract leave the intent of the parties in question–i.e., that intent is uncertain, unclear, or is open to various interpretations. Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.

Capital Color Printing, 661 S.E.2d at 583 (citations and quotation marks omitted).

Ambiguities are construed against the contract's drafter. Auto-Owners Ins. Co. v.

Neisler, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015). Where the parties' intention is not

resolved by the application of the rules of contract construction or by parol

evidence, there exists a question of fact that precludes summary judgment. Krogh

v. Pargar, LLC, 625 S.E.2d 435, 440 (Ga. Ct. App. 2005). If the existence of an

agreement is in dispute, the proponent of the agreement must establish its

existence. Herring v. Dunning, 446 S.E.2d 199, 202 (Ga. Ct. App. 1994).

## V. DISCUSSION

### A.    Whether the Woodards' Offer Made Timely Payment an Element of Acceptance

The Supreme Court of Georgia expressly ruled in this case that while an

offer made under O.C.G.A. 9-11-67.1(f)(1) requires a written acceptance as to the

five terms listed in subsection (a) it may also "require some additional act to

effectuate acceptance." Grange Mut., 797 S.E.2d at 821. It simply depends on the terms of the offer. Id. Thus, we must determine whether the Woodards' June 19 offer letter made timely payment an element of acceptance. We hold that it did.

Before the Woodards' letter listed the items the Insurer Grange had to comply with to accept the offer, it wrote, in bold, "The following items must be noted and fully and strictly complied with in order to accept this offer." Then, in both paragraphs in which the Woodards demanded $50,000 checks to settle their claims, they stated: "Timely payment is an essential element of acceptance." Similarly, the offer stated, with regard to the required affidavits: "Your acceptance of this offer requires one affidavit from . . . ." The Woodards therefore wrote in several places that all of the listed items were required for acceptance, as opposed to required for performance.

We recognize that the June 19 offer letter also stated that (1) "you have 30 days from your receipt of this offer to accept it," (2) "[y]our acceptance of this offer must be made in writing," and (3) the affidavits and checks were due after the 30-day period. But this language does not undermine the plain language of the offer letter as a whole, which contained multiple clear statements that fulfillment of all eleven conditions was necessary for acceptance. See Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 773 (11th Cir. 2011) (explaining that Georgia law directs courts to examine contracts as a whole). Therefore, by its terms, the

13

June 19 offer letter made payment an essential element of <u>acceptance</u>, not performance.

The Insurer Grange attempts to minimize the effect of the offer letter's statement that "[t]imely payment is an essential element of acceptance" by arguing that the term "essential element of acceptance" is an undefined and unrecognizable "legal term of art" and that the timely payment language is "precatory." These arguments are meritless. Under Georgia law, "unless the contract indicates otherwise, 'we generally accept that contractual terms carry their ordinary meanings.'" <u>Lafarge Bldg. Materials, Inc. v. Thompson</u>, 763 S.E.2d 444, 446 (Ga. 2014). "Essential" means "[a]bsolutely necessary" or "indispensably requisite." Oxford English Dictionary, <u>available at</u> http://www.oed.com/view/Entry/64503?redirectedFrom=essential#eid. "Essential element of acceptance" is a simple concept to understand and should be given its ordinary meaning—that payment was an "absolutely necessary" element of acceptance of the offer. Additionally, the timely payment language in the June 19 offer letter was not "precatory" because that language was not presented as merely recommended, but as required. <u>See</u> <u>Kemper v. Brown</u>, 754 S.E.2d 141, 144 (Ga. Ct. App. 2014) ("Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction.") (quotation marks omitted).

14

**B.    Whether the Insurer Grange Complied with the Payment Precondition**

We now turn to the more challenging issue of whether the Insurer Grange's July 29 issuance of the two $50,000 checks with incomplete addresses satisfied the offer's timely-payment condition.  It is undisputed that those two checks were not received by the Woodards or their attorney.

Again, the operative language in the June 19 offer letter was: "If payment is not tendered in cash pursuant to O.C.G.A. 9-11-67.1(f)(1), payment in the amount of $50,000 must be made payable to '[claimant(s) and their attorney]' within ten (10) days after your written acceptance of this offer to settle.  Timely payment is an essential element of acceptance."  The district court found that "any ambiguity created by the first sentence is immediately cured by the second sentence.  Timely payment, and not just writing the checks in a timely manner, was an essential element of acceptance."

As the district court correctly observed, Black's Law Dictionary defines "payment" as the "[p]erformance of an obligation by the delivery of money . . . ."  Black's Law Dictionary (10th ed. 2014) (emphasis added).  "Delivery," in turn, means "[t]he formal act of voluntarily transferring something; esp. the act of bringing goods, letters, etc. to a particular person or place."  Black's Law Dictionary (10th ed. 2014).  In other words, "payment" requires the "delivery" of

15

money, and "delivery" requires an actual transfer.  Thus, payment is complete only when the money changes hands.  As the district court also correctly reasoned and concluded, the Insurer Grange, under this standard, did not make timely payment and, thus, did not accept the Woodards' offer.

The Insurer Grange argues that the June 19 offer letter required only that payment be "made payable" to the Woodards and that making out settlement checks falls within the ordinary meaning of that undefined term or that, at the very least, the terms "made payable" and "timely payment" are ambiguous.  But these arguments isolate the words "must be made payable" and takes them out of context from both the full sentence containing that phrase and the next sentence in that provision.  In this case, and taking the offer letter as a whole, there is only one reasonable interpretation—that the checks had to be delivered within ten days.  See Capital Color Printing, 661 S.E.2d at 583.  Additionally, the Insurer Grange's argument would be an unreasonable and unworkable standard going forward.  If "payment" was effectuated simply upon the writing of a check, then offerees could simply write checks and sit on them indefinitely.

That brings us to the final question:  Does Georgia's mailbox rule make the Insurer Grange's payment (and acceptance) timely?  As an initial matter, we note that the Insurer Grange, in its reply brief before this Court, wrote that: "[The Woodards] point out . . . that 'Grange cannot take advantage of the 'mailbox rule'

of acceptance.' . . . So be it. Grange never argued the mailbox rule in support of its position[.]" But even had the Insurer Grange not made this concession, the improperly addressed envelope forecloses any reliance on the mailbox rule under Georgia law. See Ga. Contracts Law and Litigation § 3:3 (2d ed. 2016) ("The 'mailbox rule' provides that where the acceptance is deposited in a properly stamped and addressed envelope, the contract becomes complete and binding, whether or not the acceptance actually reaches the addressee"); Carterosa, Ltd. v. Gen. Star Indem. Co., 489 S.E.2d 83, 87 (Ga. Ct. App. 1997) (explaining that the mailbox rule applies where "the recipient of the offer thus duly deposits his acceptance in the mail, in an envelope properly stamped and addressed to the offeror").

## VI.  CONCLUSION

In light of the Supreme Court of Georgia's decision on Certified Questions 2 and 3 and our above analysis of Questions 1 and 3 (which together render Question 4 moot), we conclude that the district court correctly determined that: (1) O.C.G.A. § 9-11-67.1 does not prohibit a party from requiring timely payment as a condition of acceptance of a settlement offer; (2) the Woodards' June 19 offer letter—which stated that all eleven listed items had to be "noted and fully and strictly complied with in order to accept this offer" and that "[t]imely payment is an essential element of acceptance"—unambiguously conditioned acceptance on timely

17

payment; (3) the Insurer Grange's issuance of two $50,000 checks with incomplete addresses, which never reached the Woodards or their attorney, did not satisfy this timely-payment condition; and (4) the Insurer Grange failed to accept the Woodards' settlement offer, thus preventing the formation of a binding settlement agreement.  Accordingly, we affirm the district court's grant of summary judgment to the Woodards.

**AFFIRMED.**